Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| ASOCIACIÓN DE PROPIETARIOS DE HACIENDA DE LA BAUME, INC. Y CONDOMINIO HACIENDA DE LA BAUME II<br><br>Apelados<br><br>v.<br><br>BAOME DEVELOPMENT, LLC<br><br>Apelante | KLAN202400150 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Cabo Rojo<br><br>Caso número: CB2022CV00357<br><br>Sobre: Sentencia Declaratoria y Cobro de Dinero |

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2024.

Comparece la parte apelante, Baome Development, LLC, y nos solicita que revoquemos la *Sentencia Sumaria* emitida por el Tribunal de Primera Instancia, Sala Superior de Cabo Rojo, el 27 de octubre de 2023, notificada el 31 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró No Ha Lugar la moción de desestimación, la solicitud de sentencia sumaria y la reconvención promovidas por la parte apelante. En su consecuencia, declaró Ha Lugar la demanda enmendada incoada por la parte apelada, Asociación de Propietarios de Hacienda de la Baume, Inc. y el Condominio Hacienda de la Baume II, y emitió una *Sentencia Sumaria* a favor de esta.

Por los fundamentos que exponemos a continuación, se revoca el dictamen apelado. Veamos.

I

El 7 de julio de 2022, la Asociación de Propietarios de Hacienda de la Baume, Inc. (Asociación) y el Condominio Hacienda de la Baume II (Condominio) (apelados) incoan una *Demanda* sobre sentencia declaratoria y cobro de dinero, al amparo de la Ley de Condominios de

Número Identificador

SEN2024 _____

Puerto Rico, Ley Núm. 129-2020, según enmendada, 31 LPRA sec. 1921 *et seq.* (Ley de Condominios), en contra de Baome Development, LLC (Baome o apelante).[1] Señalaron que, a partir de abril de 2018, establecieron las cuotas de mantenimiento en el Condominio, constituido al régimen de propiedad horizontal con una Junta de Directores distinta y separada de la Asociación. Indicaron que, el 30 de enero de 2014, Firstbank de Puerto Rico (Firstbank) se convirtió en un adquirente involuntario mediante el proceso de ejecución y venta judicial de unas propiedades que comprendían el Condominio. Según adujeron, Firstbank nunca pagó las cuotas de mantenimiento.

Los apelados expresaron en la acción de epígrafe que, el 30 de marzo de 2021, Firstbank vendió a Baome el Edificio 8 del Condominio, ubicado en la finca 32,932, compuesto por apartamentos identificados del número 811 al 834 (Edificio 8). Sin embargo, alegaron que, previo a esa fecha, Baome entró en posesión del inmueble y comenzó a realizar mejoras. Arguyeron que Baome adquirió voluntariamente dicho inmueble para revenderlo. Además, adujeron que era responsabilidad de Baome obtener la información de Firstbank sobre el balance de las cuotas de mantenimiento adeudadas. Sobre ese particular, señalaron que ello fue objeto de la Escritura Núm. 38 de compraventa suscrita entre Baome y Firstbank, en la cual este último le advirtió al apelante sobre su responsabilidad de pagar las cuotas de mantenimiento. Sostuvieron que le

---

[1] Apéndice del recurso, págs. 1-22. La parte apelada incluyó junto a su acción los siguientes documentos: (1) copia del *Certificado de Incorporación de una Corporación No Autorizada a Emitir Acciones de Capital* a nombre de la Asociación, con fecha del 28 de marzo de 2016; (2) copia del *Certificado de Enmienda* del certificado de incorporación de la Asociación, con fecha del 7 de febrero de 2020; (3) copia del *Certificado de Registro* de la Asociación, con fecha del 28 de marzo de 2016; (4) copia del *Registro de Corporaciones y Entidades* de Baome, con fecha del 5 de mayo de 2015; (5) copia del *Certificado de Organización* de Baome, con fecha del 5 de mayo de 2015; (6) copia del *Certificado de Organización de una Compañía de Responsabilidad Limitada* de Baome, con fecha del 5 de mayo de 2015; (7) copia del desglose de la presunta deuda de Baome a la Asociación, en el periodo de abril de 2018 a febrero de 2021; (8) copia del desglose de la presunta deuda de Baome al Condominio, en el periodo de abril de 2018 a febrero de 2021; (9) copia de la carta sobre cuotas de mantenimiento adeudadas del Edificio 8, enviada a la Asociación y al Condominio, el 17 de enero de 2022, por Baome; (10) copia de varios cheques expedidos por Baome, dirigidos a la Asociación y al Condominio, con fechas del 19, 27, 30 y 31 de agosto de 2021; 4 de octubre de 2021; 23 y 29 de diciembre de 2021; 7 de enero de 2022; (11) copia de la evidencia de apertura de cuentas de cheque en el Banco Popular a nombre de la Asociación y del Condominio, respectivamente, con fecha del 28 de enero de 2022. Véase, Apéndice del recurso, págs. 23-48.

habían requerido a Baome las referidas cuotas a la fecha de febrero de 2021, acumuladas e impagadas a la fecha de su adquisición en marzo de 2021. Particularmente, reclamaron las siguientes cantidades por concepto de cuotas de mantenimiento para el periodo de abril de 2018 a febrero de 2021:

| Asociación | $34,141.05 |
|---|---|
| Condominio | $27,616.28 |

Especificaron que, de las cantidades desglosadas, al 28 de enero de 2022, Baome adeudaba las siguientes cuantías:

| Asociación | $16,310.27 |
|---|---|
| Condominio | $13,347.07 |

Aclararon que la diferencia en las cantidades mayores antes adeudadas fue pagada por los nuevos compradores de los apartamentos que vendió Baome, quien les estaba cobrando las cuotas. Por otro lado, plantearon que, el 28 de enero de 2022, en común acuerdo, las partes abrieron unas cuentas bancarias en el Banco Popular de Puerto Rico (Banco Popular) y depositaron las sumas adeudadas por concepto de cuotas de mantenimiento. Particularizaron que el propósito de lo anterior fue para asegurar el pago de lo adeudado, hasta tanto el foro sentenciador determinara si procedía o no el cobro de dinero. Argumentaron que, no habiendo Baome efectuado pago alguno, la deuda existente era líquida y exigible. En virtud de ello, solicitaron que se ordenara a Baome el pago de $16,310.27 a la Asociación y $13,347.07 al Condominio, más una suma en concepto de honorarios de abogado(a).

Por su parte, el 28 de diciembre de 2022, Baome instó una *Moción de Desestimación Parcial*.[2] En síntesis, argumentó que no existían alegaciones suficientes para que la Asociación cobrara las partidas que pretendía reclamar en la acción de epígrafe. Especificó que las únicas alegaciones que hacían referencia directa a la Asociación eran las alegaciones 1-2, 26-27 y 30 de la *Demanda*. Por otro lado, también adujo

---

[2] Apéndice del recurso, págs. 49-54.

que no había alegación alguna que aseverara que la Asociación estaba sometida al régimen de propiedad horizontal. Sobre ese particular, abundó que la parte apelada hizo alegaciones concernientes al régimen de propiedad horizontal que vinculaban al Condominio, mas no a la Asociación. Arguyó que en la *Demanda* tampoco se especificó si ambas coapeladas establecieron sus respectivas cuotas de mantenimiento en la fecha alegada. Planteó que de dicho escrito no surgía ni una sola alegación sobre la legitimación de la Asociación para cobrar los $16,310.27 que reclamaba, ni una fuente de derecho citada a esos efectos. Por ello, solicitó que se desestimara la causa de acción incoada por la Asociación.

El mismo día, Baome presentó su *Contestación a Demanda y Reconvención*.[3] En esencia, negó las alegaciones esbozadas en su contra. Indicó que la controversia con la parte apelada se originó cuando solicitó las certificaciones de deuda para poder llevar a cabo los cierres de las

---

[3] Apéndice del recurso, págs. 55-76. Baome presentó los siguientes documentos junto a su escrito: (1) copia de la Escritura #9, *Escritura de Condiciones Restrictivas y Servidumbres en Equidad de la Urbanización Haciendas de la Baume*, con fecha del 7 de febrero de 2008; (2) copia de la Escritura Núm. 60, *Segregación*, con fecha del 1 de mayo de 2008; (3) copia de la Escritura Núm. 302, *Escritura de Constitución de Régimen de Propiedad Horizontal para el "Condominio Hacienda de la Baime II"*, con fecha del 19 de diciembre de 2008; (4) copia de la Escritura Núm. 107, *Acta de Subsanación*, con fecha del 18 de mayo de 2009; (5) copia de la Escritura Núm. 37, *Escritura sobre Declaración de Edificación Adicional para Incorporar al Régimen de Propiedad Horizontal del Condominio Hacienda de la Baume II*, con fecha del 30 de marzo de 2021; (6) copia de la Escritura Núm. 38, *Compraventa*, con fecha del 30 de marzo de 2021; (7) copia de la Escritura Núm. 9, *Individualización, Liberación y Compraventa*, con fecha del 11 de febrero de 2022; (8) copia de la Escritura Núm. 51, *Individualización, Liberación y Compraventa*, con fecha del 30 de agosto de 2021; (9) copia de la Escritura Núm. 77, *Individualización, Liberación y Compraventa*, con fecha del 29 de diciembre de 2021; (10) copia de la Escritura Núm. 52, *Individualización, Liberación y Compraventa*, con fecha del 31 de marzo de 2021; (11) copia de la Escritura Núm. 48, *Individualización, Liberación y Compraventa*, con fecha del 19 de agosto de 2021; (12) copia de la Escritura Núm. 50, *Individualización, Liberación y Compraventa*, con fecha del 27 de agosto de 2021; (13) copia de la Escritura Núm. 49, *Individualización, Liberación y Compraventa*, con fecha del 19 de agosto de 2021; (14) copia de la Escritura Núm. 8, *Individualización, Liberación y Compraventa*, con fecha del 11 de febrero de 2022; (15) copia de la Escritura Núm. 65, *Individualización, Liberación y Compraventa*, con fecha del 8 de noviembre de 2021; (16) copia de la Escritura Núm. 7, *Individualización, Liberación y Compraventa*, con fecha del 10 de febrero de 2022; (17) copia de la Escritura Núm. 12, *Individualización, Liberación y Compraventa*, con fecha del 23 de febrero de 2022; (18) copia de la Escritura Núm. 10, *Individualización, Liberación y Compraventa*, con fecha del 15 de febrero de 2022; (19) copia de la Escritura Núm. 18, *Segregación, Descripción de Remanente y Constitución de Servidumbre de Paso*, con fecha del 11 de marzo de 2016: (20) copia de la Escritura Núm. 38, *Compraventa*, con fecha del 30 de marzo de 2021; (21) copia de la *Autorización de Planos de Inscripción*, con fecha del 24 de marzo de 2022; (22) copia de mensaje vía correo electrónico sobre certificación de HOA de las Villas 15 y 20 de la Hacienda de la Baume, con fecha del 8 de agosto de 2022; (23) copia de mensaje vía correo electrónico sobre ventas de villas, con fecha del 10 de agosto de 2022; (24) copia de la *Certificación de Deuda* de la Asociación, con fecha del 11 de agosto de 2022; (25) copia de mensaje vía correo electrónico sobre las certificaciones de la cuota de mantenimiento de Villas Baume, con fecha del 9 de septiembre de 2022; (26) copia de la carta sobre cuotas de mantenimiento adeudadas del Edificio 8 en la Hacienda de la Baume II, con fecha del 28 de enero de 2022. Véase, Apéndice del recurso, págs. 77-777.

unidades del Edificio 8. Alegó que quien ostentaba personalidad jurídica para incoar la acción de epígrafe era el Consejo de Titulares del Condominio, no el Condominio, y reiteró que la Asociación no tenía derecho alguno a reclamar las partidas que intentaba cobrarle. Asimismo, negó adeudar las sumas alegadas y adujo que no tenía obligación de pagarlas.

En la reconvención, Baome planteó que nunca tuvo obligación alguna de pago de cuota de mantenimiento respecto a los apartamentos del Edificio 8 conforme a la Escritura Núm. 9 de *Condiciones Restrictivas y Servidumbres en Equidad de la Urbanización Haciendas de la Baume Paso*, otorgada el 7 de febrero de 2008 (Escritura Núm. 9). Especificó que ello se debía a que, para las fechas en que fue titular de los apartamentos, estos no habían sido individualizados aún y, por tanto, nunca fue propietario, según definido en la referida escritura. Indicó que las unidades del Edificio 8 fueron individualizadas al momento en que se llevaron a cabo las compraventas de estas a terceros, como Firstbank, por lo que no respondía por las cuotas de mantenimiento adeudadas desde abril de 2018. Conforme a lo antes expuesto, arguyó que solo respondía por las deudas acumuladas desde principios de agosto de 2022, fecha en la cual advino propietario y, consecuentemente, responsable por las cuotas de mantenimiento, en virtud de la Escritura Núm. 9. En vista de lo anterior, solicitó que se dictara una sentencia declaratoria, a los fines de que el tribunal declarara que la Asociación no tenía derecho de cobrarle lo que pretendía. Además, solicitó que se interpretara la Escritura Núm. 9.

El 15 de marzo de 2023, la parte apelada se opuso a la solicitud de desestimación.[4] Sostuvo que la Asociación era una corporación con personalidad jurídica, cuyo propósito era administrar las áreas comunales del complejo del Condominio, por lo que estaba facultada para el cobro de lo reclamado en la *Demanda*. Sobre ese particular, alegó que el poder, la autoridad y la legitimación para cobrar las cuotas de mantenimiento de la

---

[4] Apéndice del recurso, págs. 797-802.

Asociación surgían inequívocamente de la Escritura Núm. 9. En virtud de ello, solicitó que se declarara No Ha Lugar la moción de desestimación.

A su vez, la parte apelada contestó la reconvención el mismo día.[5] Señaló que le había requerido a Baome, como adquirente voluntario del Edificio 8, las cuotas de mantenimiento a la fecha de febrero de 2021, acumuladas e impagadas al momento de la adquisición del inmueble en marzo de 2021. Argumentó que, al Baome ser un adquirente voluntario con el propósito de revender las propiedades que componían el Edificio 8, tenía la obligación de pagar todas las cuotas acumuladas al momento en que adquirió la propiedad en cuestión; es decir, desde el 28 de septiembre de 2021 y no desde principios de agosto de 2022, según alegado. Según adujo, Baome no podía invocar la protección ni la prelación del crédito que le asistía a un adquirente involuntario, por lo que era responsable solidariamente del pago de todas las cuotas de mantenimiento adeudadas al momento de la adquisición del inmueble, conforme a la Ley de Condominios, *supra*. Señaló que Baome fue titular del Edificio 8 desde que suscribió la Escritura Núm. 104 de *Compraventa* el 28 de septiembre de 2021 (Escritura Núm. 104), de cuyo documento surgía que se obligaba al pago de cualquier balance existente.

En desacuerdo, el 30 de marzo de 2023, Baome replicó a la oposición a su solicitud de desestimación.[6] Aclaró que únicamente había instado una solicitud de desestimación en contra de la reclamación de la Asociación, basada en la insuficiencia de las alegaciones de la acción de epígrafe respecto a la reclamación de esta última. Reiteró que en la *Demanda* no había alegación alguna a los efectos de que la Asociación estaba sometida a un régimen de propiedad horizontal, aun cuando pretendía cobrar unas partidas bajo la Ley de Condominios, *supra*, la cual no le era de aplicación. Adujo que la parte apelada intentó enmendar sus alegaciones por medio de una oposición a su solicitud de desestimación,

---

[5] Apéndice del recurso, págs. 782-796.
[6] Íd., págs. 848-851.

pero continuaba sin alegar la obligación de este a pagarle a la Asociación lo que pretendía cobrarle. Por otro lado, aclaró que la capacidad para demandar y administrar de la Asociación no eran asuntos que estaban en controversia, sino la falta de alegación del derecho de la Asociación de cobrarle las partidas reclamadas y la obligación específica de pagarle. Sostuvo que las únicas alegaciones hechas por la Asociación en la *Demanda* no eran suficientes para demostrar su derecho a cobrar, ni para la concesión de un remedio.

Por su parte, el 1 de mayo de 2023, la parte apelada duplicó.[7] Planteó que la Asociación no tenía que estar sometida al régimen de propiedad horizontal para poder cobrar las cuotas de mantenimiento reclamadas en la acción de epígrafe, pues a esta le era de aplicación la Ley General de Corporaciones, Ley Núm. 164-2009, según enmendada, 14 LPRA sec. 3501 *et seq.* (Ley de Corporaciones), y la Escritura Núm. 9. Reiteró que, de las alegaciones en la *Demanda*, surgía claramente la autoridad en ley por la cual la Asociación reclamaba las cuotas en cuestión, por lo que no entendía necesario someter una demanda enmendada. No obstante, indicó que, del tribunal entenderlo necesario, solicitaba la autorización correspondiente al amparo de la Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.1, para presentarla. Sobre la Escritura Núm. 9, argumentó que de esta surgía cuál sería la cuota provisional que la

---

[7] Apéndice del recurso, págs. 869-874. Baome acompañó su dúplica con la siguiente documentación: (1) copia del *Certificado de Incorporación de una Corporación No Autorizada a Emitir Acciones de Capital*, con fecha del 28 de marzo de 2016; (2) copia del *Certificado de Registro* de la Asociación, con fecha del 28 de marzo de 2016; (3) copia del *Registro de Corporaciones y Entidades* de Baome, con fecha del 5 de mayo de 2015; (4) copia del *Certificado de Organización de una Compañía de Responsabilidad Limitada* de Baome, con fecha del 5 de mayo de 2015; (5) copia de la Escritura Núm. 38, *Compraventa*, con fecha del 30 de marzo de 2021; (6) copia del desglose de la presunta deuda de Baome a la Asociación, en el periodo de abril de 2018 a febrero de 2021; (7) copia del desglose de la presunta deuda de Baome al Condominio, en el periodo de abril de 2018 a febrero de 2021; (8) copia de la carta sobre cuotas de mantenimiento adeudadas del Edificio 8, enviada a la Asociación y al Condominio, el 17 de enero de 2022, por Baome; (9) copia de varios cheques expedidos por Baome, dirigidos a la Asociación y al Condominio, con fechas del 19, 27, 30 y 31 de agosto de 2021; (10) copia de la evidencia de apertura de cuentas de cheque en el Banco Popular a nombre de la Asociación y del Condominio, respectivamente, con fecha del 28 de enero de 2022; (11) copia de la Escritura Núm. 9, *Escritura de Condiciones Restrictivas y Servidumbres en Equidad de la Urbanización Haciendas de la Baume*, con fecha del 7 de febrero de 2008; (12) Escritura Núm. 302, *Escritura de Constitución de Régimen de Propiedad Horizontal para el "Condominio Hacienda de la Baume II"*, con fecha del 19 de diciembre de 2008; (13) copia de la *Demanda Enmendada* incoada por la Asociación y el Condominio en contra de Baome. Véase, Apéndice del recurso, págs. 875-1012.

Asociación estaba autorizada a cobrar, hasta que se aprobara el presupuesto. Especificó que la aprobación del presupuesto se realizó a partir de abril de 2018, fecha desde la cual requerían el cobro a Baome. Fundamentó lo anterior con la siguiente cita del inciso "Dos" de la página 15 de la mencionada escritura:

> "---(Dos) Cuota Regular Anual Provisional - "HACIENDA", hasta tanto quede constituida como entidad independiente, la Asociación, fijará una cuota provisional de mantenimiento de SETENTA Y CINCO CENTAVOS DE DÓLAR ($0.75), por pie cuadrado ANUALES, la cual será pagada por cada "Propietario" mensualmente[,] a partir del día primero (1ro) del mes siguiente a aquel que adquirió su Unidad de Vivienda. Cualquier aumento a dicha cuota provisional deberá ser aprobado por "HACIENDA" actuando como miembro tipo "A" o tipo "B", según sea el caso, conjuntamente con los demás miembros de la Asociación, convocados a una reunión especial al efecto."---------------------- (Énfasis omitido).[8]

Así las cosas, el 10 de agosto de 2023, Baome instó una *Solicitud de Sentencia Sumaria*.[9] En síntesis, sostuvo que procedía dictar sentencia sumaria parcial sobre su alegación en contra de la Asociación, a los fines de establecer que esta no contaba con un derecho a cobrar lo que pretendía. Indicó que la Escritura Núm. 9 definía *propietario* como el titular de una unidad de vivienda (villa o apartamento). Asimismo, citó la siguiente cláusula de la mencionada escritura: "[c]ada '[p]ropietario' de Unidad de Vivienda, . . . por la mera titularidad de una Unidad de Vivienda, se obligará y se considerará como que acuerda y accede a todas las obligaciones, términos y disposiciones de esta Escritura incluyendo, . . . obligaciones relacionadas con . . . pagar las cuotas de mantenimiento de la 'Urbanización' o relacionadas con las mismas". Interpretó que de dicha cita era forzoso concluir que quienes único tenían la obligación de pagar las cuotas de mantenimiento eran los titulares de las unidades de vivienda; o sea, de las villas o apartamentos, según se conceptualizaba en la definición de *propietario*. Sobre ello, planteó que nunca fue propietario del Edificio 8,

---

[8] Apéndice del recurso, pág. 871.
[9] Íd., págs. 1016-1034. Junto a su petitorio, Baome presentó los siguientes documentos: (1) copia de la misiva sobre las cuotas de mantenimiento de las unidades 811-814, 821-824, 831-834 del Edificio 8, enviada a la Asociación, el 21 de mayo de 2021, por Baome; (2) copia de la *Declaración Jurada* suscrita por Jaime Casellas Rodríguez, el 9 de agosto de 2023. Véase, Apéndice del recurso, págs. 1035-1037.

según definido, y, por tanto, nunca fue responsable por las cuotas de mantenimiento de los apartamentos, toda vez que, para la fecha en que fue titular de estos, no habían sido individualizados aún.

Por otro lado, Baome alegó que la Asociación también le reclamaba el pago de las cuotas de mantenimiento de unas Villas ubicadas en el desarrollo del Condominio, específicamente trece (13) solares sitos en el remanente de la finca número 7,027 (Villas). En apoyo a su argumento, definió el concepto *villas* como "cualquier solar o lote de terreno aprobado por la Administración de Reglamentos y Permisos para su segregación e inscripción como finca independiente y que contenga una estructura a ser dedicada a uso residencial", según la Escritura Núm. 9. Arguyó que, a principios de agosto de 2022, fue cuando empezaron a existir las estructuras a ser dedicadas a uso residencial en la referida propiedad, por lo que, en ese momento, se constituyeron las Villas y estaba obligado a pagar las cuotas de mantenimiento como propietario de estas, en virtud de la Escritura Núm. 9. De otro lado, afirmó que no eran aplicables las figuras de adquirente voluntario e involuntario en cuanto al reclamo de la Asociación, según propuesto por la parte apelada.

Baome sostuvo que la Asociación no era un Consejo de Titulares bajo un condominio sometido a dicho régimen. Señaló que la Asociación se regía por la Escritura Núm. 9; es decir, por una escritura matriz de condiciones restrictivas y no una de régimen de propiedad horizontal amparada en la Ley de Condominios, *supra*. Por ello, reiteró que los planteamientos de la Asociación por medio de los cuales pretendía cobrarle a Baome unas sumas ascendientes a $16,310.27 eran improcedentes, como cuestión de derecho. Concluyó que, habiendo expuesto que lo reclamado por la Asociación no procedía como cuestión de derecho, restaba que el tribunal emitiera una sentencia declaratoria a tales efectos. En cuanto a lo reclamado por el Condominio, arguyó que existían controversias de hecho sobre lo alegado en la *Demanda*, por lo que solicitó

que la sentencia declaratoria fuera de carácter parcial, resolviendo sumariamente la controversia reclamada por la Asociación.

El 29 de agosto de 2023, la parte apelada presentó una *Moción Solicitando se Autorice Demanda Enmendada*, a los únicos efectos de sustituir al presidente de la Asociación, así como al presidente del Condominio.[10]

En atención a dicho petitorio, el 13 de septiembre de 2023, notificada al día siguiente, el foro primario emitió una *Resolución*, mediante la cual aceptó la enmienda solicitada.[11] No obstante, ordenó que, en cinco (5) días, la parte apelada presentara la demanda enmendada en una entrada independiente en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), no como un anejo.[12]

Posteriormente, el 30 de agosto de 2023, la parte apelada sometió una *Solicitud de Desestimación y[,] en su defecto, Contestación en Oposición a Solicitud de Sentencia Sumaria*.[13] En cuanto a la moción de desestimación, señaló que las alegaciones y argumentos esbozados en el petitorio sumario de Baome habían sido sometidos previamente para la consideración del tribunal mediante una moción de desestimación la cual seguía pendiente de adjudicación. De otro lado, arguyó que el apelante incumplió con la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, específicamente con la *Declaración Jurada* sometida por no especificar hechos que serían admisibles en evidencia. Añadió que Baome tampoco acompañó su escrito con los documentos que hacía referencia en el mismo.

En lo referente a su oposición al petitorio sumario, la parte apelada aclaró que, luego de comprar las propiedades en controversia con ánimo de reventa, Baome solicitó las certificaciones de deudas sobre las cuotas de mantenimiento de los apartamentos que componían el Edificio 8,

---

[10] Apéndice del recurso, págs. 1088-1089. Los apelados anejaron junto a su moción la *Demanda Enmendada*. Véase, Apéndice del recurso, págs. 1090-1111.

[11] Íd., págs. 1112-1114.

[12] Cabe destacar que del SUMAC no surge que los apelados cumplieran con dicha orden.

[13] Apéndice del recurso, págs. 1038-1081. La parte apelada incluyó junto a su moción los siguientes documentos: (1) copia de la *Declaración Jurada* suscrita por Yovin Vargas Llavona el 30 de agosto de 2023; (2) copia de la *Resolución Corporativa* de la Asociación, con fecha del 8 de julio de 2023; (3) copia de la fotografía de las Villas existentes al 2 de septiembre de 2021. Véase, Apéndice del recurso, págs. 1082-1087.

mientras que, estando incoada la demanda de epígrafe, solicitó las de las Villas. Alegó que, una vez recibida las certificaciones de deuda, Baome objetó el cobro de estas para el periodo anterior a la fecha de la compraventa de los inmuebles. No obstante, adujo que la obligación de pago de Baome surgía de la Escritura Núm. 9. Particularizó que, desde el 2008, mediante la referida escritura, quedó establecida la obligación del pago de las cuotas de mantenimiento provisional que tenía derecho a cobrar la Asociación hasta que se hubiese establecido el presupuesto, el cual se estableció en el año 2018.

La parte apelada reiteró en su oposición que Baome era un adquirente voluntario que respondía por las cuotas impagadas por Firstbank a la fecha de la compra del inmueble en cuestión, más las que se acumularan de esa fecha en adelante. Planteó que era responsabilidad de la parte apelante obtener la información de su vendedor sobre el balance de las cuotas adeudadas. Sobre ello, argumentó que, de la propia escritura de compraventa, surgía que Firstbank advirtió a Baome sobre su responsabilidad del pago de las cuotas de mantenimiento. Por tal razón, planteó que el apelante estaba obligado a pagar las cuotas de mantenimiento impagadas a la fecha en que adquirió los apartamentos del Edificio 8, así como las Villas, existentes al momento de la compraventa. Adujo que, aun cuando Baome negaba ser responsable de lo reclamado, en total contradicción, había admitido que tenía una obligación de pagar las cuotas de mantenimiento, pero desde agosto de 2022, fecha en la cual alegó que comenzaron a existir las Villas y las estructuras para uso residencial del Edificio 8. En cuanto a ello, argumentó que, de la propia definición incluida en la Escritura Núm. 9, surgía que el *propietario* era, a su vez, *titular* y que en esta, además, se establecía la obligación del propietario de pagar las cuotas a partir del día siguiente a la fecha en que compró la propiedad. Indicó que, en el caso de Baome, siendo propietario desde el 28 de septiembre de 2021 de una propiedad existente con deudas acumuladas, tenía la obligación de pago de las mismas.

Los apelados reiteraron que de la Escritura Núm. 9 surgía cuál sería la cuota provisional que estaba autorizada a cobrar la Asociación, hasta tanto se hubiese aprobado el presupuesto, lo cual se hizo a partir de abril 2018, fecha desde la que requerían el cobro a Baome, quien adquirió el inmueble en marzo de 2021, con cuotas de mantenimiento impagadas por su dueño anterior. Por lo antes expuesto, sostuvieron que no procedía dictar sentencia sumaria, ya que la Asociación tenía autoridad legal para reclamar el cobro de las cuotas de mantenimiento que reclamaba a la parte apelante. De igual forma, expresaron lo siguiente: "es imperativo que este Honorable Tribunal examine todos los [h]echos controvertidos por esta parte, los que[,]a su vez[,] se consideran razones para no otorgar la [solicitud de] [s]entencia [s]umaria que solicita la parte [apelante]. Si no que[,] por el contrario, debería dictarse a favor de la parte [apelada], habiéndose sustentado a saciedad sus alegaciones […]".[14] En respuesta, el 16 de octubre de 2023, Baome replicó.[15]

Evaluadas las posturas de las partes, el 27 de octubre de 2023, notificada el 31 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia Sumaria* que nos ocupa.[16] En lo pertinente, desglosó las siguientes determinaciones de hechos:

**Hechos relevantes a la Controversia A sobre las cuotas de mantenimiento del Edificio ocho (8):**

Firstbank Puerto Rico (en adelante el Firstbank o el Banco), es una entidad bancaria organizada bajo las leyes del Estado Libre Asociado de PR, que ofreció el financiamiento para la construcción de las propiedades que comprenden [la] Hacienda de la Baume (Edificios y Villas).

El 7 de febrero de 2008[,] se otorgó la Escritura #9: "Escritura de Condiciones Restrictivas y Servidumbres en Equidad de la Urbanización Hacienda de la Baume", (en adelante Escritura 9), ante la [n]otario Público Gretchen Huyke Nicole, sobre la finca 7,027 de Cabo Rojo.

De la Escritura 9, surge cuál sería la cuota provisional que estaba autorizada a cobrar la Asociación, hasta tanto se hubiese aprobado el presupuesto, lo que[,] en efecto[,] se hizo a partir de abril 2018, fecha desde la que la parte [apelada], requiere el cobro a la parte [apelante], quien adquirió el inmueble en marzo de 2021, con cuotas de mantenimiento impagadas por su anterior dueño.

[14] Apéndice del recurso, págs. 1074-1075. (Énfasis omitido).
[15] Íd., págs. 1115-1150.
[16] Íd., págs. 1151-1188.

Sobre este particular y refiriéndonos a la Escritura 9, pág. 15, inciso Dos, establece, y citamos:

"---(Dos) Cuota Regular Anual Provisional -" HACIENDA", hasta tanto quede constituida como entidad independiente, la Asociación, fijará una cuota provisional de mantenimiento de SETENTA Y CINCO CENTAVOSDE DÓLAR ($0.75), por pie cuadrado ANUALES, la cual será pagada por cada "Propietario" mensualmente[,] a partir del día primero (1ro) del mes siguiente a aquel que adquirió su Unidad de Vivienda. Cualquier aumento a dicha cuota provisional deberá ser aprobado por "HACIENDA" actuando como miembro tipo "A" o tipo "B", según sea el caso, conjuntamente con los demás miembros de la Asociación, convocados a una reunión especial al efecto."-----------------
---------------

La parte [apelada] estableció las cuotas de mantenimiento a partir de abril del 2018. Sin embargo, el Banco NUNCA pagó cuota alguna de [m]antenimiento a la parte [apelada].

El Firstbank adquirió el inmueble, identificado como el E[dificio] 8, mediante proceso de ejecución y de venta judicial, a título de cesión, el 30 de enero de 2014, según surge de la Escritura #12, ante el [n]otario Santiago Mari Roca.

El Edificio 8 está sujeto a las Condiciones Restrictivas que surgen de la Escritura 9, antes relacionada. Está sometido al [r]égimen de [p]ropiedad [h]orizontal, según la Escritura 302 sobre Constitución de Régimen de Propiedad Horizontal para el Condominio Hacienda de la Baume II[,] y le aplican las disposiciones de la Ley de Condominios, Ley Núm. 129 de 16 de [a]gosto de 2020.

El 30 de marzo de 2021, según surge de la Escritura #38 sobre compraventa, Firstbank Puerto Rico, vende a Baome Development, LLC (parte [apelante]), el Edificio 8. De la referida [E]scritura #38 sobre compraventa en la página 13, surge, y citamos:

*"El precio de venta se distribuye como sigue: Cada uno de los apartamentos [o]chocientos once (811) a [o]chocientos treinta y tres (833) por la cantidad de [t]reinta y [t]res mil [t]rescientos [t]reinta y tres con [t]reinta y [t]res centavos ($33,333.33) cada uno; y el apartamento [o]chocientos [t]reinta y [c]uatro por la suma de [t]reinta y [t]res mil [t]rescientos [t]reinta y [t]res dólares con [t]reinta y siete [c]entavos ($33,333.37)."*

Por lo tanto, la parte [apelante] adquirió apartamentos existentes, ya edificados. Surge[,] además, que los apartamentos están individualmente identificados en la Escritura de compraventa, identificándose de cada uno, su participación sobre los elementos comunes.

En la misma [p]ágina 13 de la Escritura #38, antes citada, surge también, en su [i]nciso "Cuarto" y citamos:

*"La parte COMPRADORA entiende y reconoce que la parte VENDEDORA ha adquirido la edificación, los [a]partamentos y/o el [i]nmueble (colectivamente denominadas las "[p]ropiedades") por medio de ejecución de hipoteca y/o dación en pago…"*

En la Página 18, de la referida Escritura #38, en su [i]nciso G, lee y citamos:

"---(G) La parte COMPRADORA ha sido advertida de su responsabilidad, conforme con los acuerdos con la parte VENDEDORA, de dar cumplimiento a las disposiciones y responsabilidades aplicables a las [p]ropiedades y al [i]nmueble en relación a la Ley de Propiedad Horizontal[,] según enmendada, al Condominio Hacienda de la Baume II, pago de cuotas de mantenimiento y demás obligaciones relacionadas." […]

Baome Development, LLC adquirió el Edificio 8 para revender el mismo, lo que[,] en efecto[,] ya realizó.

La parte [apelada] requirió a la parte [apelante], las cuotas de mantenimiento, acumuladas e impagadas, a la fecha de febrero 2021, siendo la fecha de su adquisición del [E]dificio 8 (apartamentos), el 30 de marzo de 2021.

La cantidad reclamada por la parte [apelada] a la parte [apelante] por concepto de cuotas de mantenimiento para el per[i]odo de abril 2018 a febrero 2021 son: Asociación de Propietarios de Hacienda de la Baume la suma de $34,141.05 y el Condominio Hacienda de la Baume la suma de $27,616.28.

De las cantidades antes desglosadas, al 28 de enero de 2022, la parte [apelante] adeuda a la parte [apelada] lo siguiente:

| | |
|---|---|
| Asociación […] | $16,310.27 |
| Condominio […] | $13,347.07 |

Las cuotas de mantenimiento en cuestión han sido pagadas por los nuevos compradores y titulares de los apartamentos del Edificio 8, a quienes la parte [apelante] les vendió, y les cobró las cuotas de mantenimiento que la parte [apelada] le está cobrando a [e]sta.

Las partes, en común acuerdo, el 28 de enero de 2022, comparecieron a la sucursal del Banco Popular de PR, que ubica en la Carretera 100 de Cabo Rojo, y abrieron dos cuentas bancarias (una a favor de la Asociación y la otra a favor del Condominio), siendo ambas partes firmas autorizadas. En las referidas cuentas la parte [apelante] depositó los cheques emitidos por los nuevos titulares, en concepto de las cuotas de mantenimiento que la parte [apelada] requirió a la parte [apelante], entiéndase la suma de $16,310.27 en la [c]uenta de la Asociación de Propietarios de Hacienda de la Baume y $13,347.07 en la [c]uenta de Condominio Hacienda de la Baume. Los dineros depositados en el Banco Popular son pagos realizados por los nuevos titulares a quienes la parte [apelante] les vendió los apartamentos y[,] como parte de los gastos de cierre, les cobró las cuotas que la parte [apelada] le está reclamando a la parte [apelante].

Al abrir las cuentas bancarias, las partes acordaron que ninguna de las partes puede disponer de dinero alguno de las referidas cuentas salvo, con la firma de ambas partes, o por orden de este [t]ribunal.

Las cuentas abiertas en el Banco Popular de PR son:

a. Cuenta #xxx0676 en la que se depositó la suma de $16,310.27 a favor de la Asociación de Propietarios de Hacienda de la Baume, Inc.

b. Cuenta #xxx0685 en la que se depositó la suma de $13,347.07 a favor de Condominio Hacienda de la Baume II.

El propósito de la apertura de las referidas cuentas fue para asegurar el pago de las referidas sumas de dinero que están en controversia, por concepto de cuotas de mantenimiento del Edificio 8, hasta tanto este [t]ribunal determine si procede o no el cobro que reclaman los aquí [apelados].

Al día de hoy el balance en la cuenta de Asociación ha variado ya que, específicamente en dicha [c]uenta, se han depositado los dineros de las cuotas de mantenimiento de las Villas, que están en disputa entre las partes (Controversia B), al igual que la de los apartamentos. Estas Villas fueron vendidas posterior a radicarse la Demanda, por lo que la parte [apelante] las incluyó en su Reconvención. Al mes de agosto de 2023, la referida cuenta tiene un balance de $57,830.42.

Por otro lado, la Escritura #9, antes relacionada, establece lo siguiente en relación a las cuotas de mantenimiento:

> "-Tercera: Cuotas de Mantenimiento: -------------------
> -----------------------------------
>> ---Sección A - Obligación Personal de Pago de Cuotas de Mantenimiento, Gravamen Real por no Pago de Cuotas
>> ---Sección A: ----------------------------------------
>> ---(Uno) Obligación de pago, tipo de cuotas o cargos: Cada "[p]ropietario" de Unidad de Vivienda, excepto "HACIENDA", por su condición de desarrolladora, por la mera titularidad de una Unidad de Vivienda, se obligara y se considerara como que acuerda y accede a todas las obligaciones, términos y disposiciones de esta Escritura incluyendo, en especial, la obligación u obligaciones relacionadas con relevos e inmunidad de "HACIENDA" y las de pagar las cuotas de mantenimiento de la "Urbanización" o relacionadas con las mismas.-------------------
>> ---El término cuotas abarcara: (i) las imposiciones o cuotas especiales para los propósitos indicados en la Sección D de este apartado, pintura y mejoras capitales; (ii) las imposiciones o cuotas extraordinarias a ser fijadas, establecidas y cobradas, de tiempo en tiempo, según se dispone en la Sección E de esta cláusula."--------------------------------
>> --------------------------------------------------------

En la referida Escritura 9 sobre Condiciones Restrictivas, se define como [p]ropietario, como sigue *[sic]*:

> "---g) "Propietario" significará y se referirá al titular de una Unidad de Vivienda (Villa o apartamento), sea [e]sta una o más personas naturales, o una sociedad, corporación, asociación u otras entidades legales. Dicho término no incluirá a un acreedor hipotecario a menos que [e]ste haya adquirido título de la Unidad de Vivienda.--------" […]

La parte [apelante] alega que no le corresponde pagar las cuotas de mantenimiento acumuladas a la fecha de marzo de 2021, cuando compró la propiedad (Edificio 8 de apartamentos) "dado a que para las fechas en que Baome fue titular de los apartamentos, estos apartamentos no habían sido individualizados aún y[,] por tanto[,] Baome nunca fue [p]ropietario, según definido en la Escritura 9."

**Hechos relevantes a la Controversia B
sobre las cuotas de mantenimiento de las VILLAS**

Posterior a la radicación de la Demanda, razón por la que la parte [apelante] radica una [r]econvención, surge la misma controversia en relación al pago de cuotas de mantenimiento, pero en esta ocasión sobre unas Villas que también forman parte de la urbanización Hacienda de la Baume.

No siendo estas Villas parte del Condominio, es únicamente la Asociación quien reclama el cobro de las cuotas de mantenimiento sobre las referidas Villas a la parte [apelante]. Las cuotas en controversia, han sido depositadas en la [c]uenta de Banco Popular antes relacionada, a favor de Asociación, lo que refleja el aumento en el balance de $16,310.27 (balance a la fecha de la radicación de la Demanda) a $57,830.42 (Balance a agosto 2023).

La parte [apelante] adquirió las Villas que ubican en Baume, el 28 de septiembre del 2021, según la Escritura #104 sobre Compraventa.

A dicha fecha las Villas eran existentes y habían acumulado una deuda en concepto de cuotas de mantenimiento, cuyo pago reclama la co-[aeplada] Asociación de Propietarios de Hacienda de la Baume, Inc.

Las Villas, como parte de la urbanización, están sujetas a las Condiciones Restrictivas que surgen de la Escritura 9, antes relacionada.

La legitimación de la Asociación para cobrar las cuotas de mantenimiento a la parte [apelante] por concepto de la Villas, surge de la Escritura 9 sobre Condiciones Restrictivas y [S]ervidumbres en [E]quidad de la urbanización Haciendas de la Baume, otorgada el 7 de febrero de 200820 y de su Certificado de Incorporación.

De la referida Escritura 9, surge expresamente de las págs. 4 y 5, y citamos:

> "---TERCERO: Con el propósito de crear una entidad jurídica a la cual pueda delegarse y asignarse el poder y la autoridad de implementar los objetivos indicados anteriormente, así como el poder de mantener y administrar las facilidades recreativas y propiedades comunales de la urbanización y de prestar los servicios que [e]stas requieran, así como el poder de administrar y velar por el cumplimiento de las condiciones restrictivas y obligaciones afirmativas o negativas (Servidumbre en Equidad) y el poder de imponer, cobrar y reembolsar todas las imposiciones y cargos necesarios para su mantenimiento y administración apropiado, y otras funciones, "HACIENDA" ha incorporado bajo las leyes del Estado Libre Asociado, o se propone incorporar, una corporación sin fines de lucro denominada ""ASOCIACION *[sic]* DE PROPIETARIOS DE HACIENDA DE LA BAUME, INC.", la cual tendrá las funciones que en este documento se indican y las que sus miembros en un futuro le impongan.

En misma Escritura #9, en la parte de Definiciones, pág. 5, establece, y citamos:

> ---a) "Asociación" significará y se referirá a "ASOCIACION DE PROPIETARIOS DE HACIENDA DE LA BAUME, INC." una corporación sin fines de lucro, organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico.

Del Certificado de Incorporación de la Asociación expresamente surge que el propósito de la Asociación es administrar las áreas comunales del complejo Hacienda de la Baume.

Alega la parte [apelante] que no adeuda cantidad alguna en concepto de las cuotas de mantenimiento a la Asociación, por alegadamente insuficiencia de las alegaciones de la Asociación en cuanto a su legitimidad para el cobro de lo que reclama y[,] de tenerla, adeudaría solo lo acumulado desde agosto de 2022 porque "Baome figura como [p]ropietario[,] según la Escritura Núm. 9, desde agosto de 2022, estando obligada a pagar las cuotas de mantenimiento de la Urbanización desde dicha fecha." Posteriormente, la parte demandada alega que adeudaría s[o]lo desde marzo de 2022.[17]

A su vez, el foro primario esbozó las siguientes controversias a resolver:

A. Este [t]ribunal debe resolver si la parte [apelante], quien adquiere una propiedad (Edificio [Núm.] 8 de apartamentos) con el propósito de reventa, adeuda a la parte [apelada] (Asociación y Condominio), las sumas de dinero acumuladas e impagadas, a la fecha en que la parte [apelante] adquirió la propiedad, por concepto de cuotas de mantenimiento, desde abril de 2018 a febrero 2021.

O si[,] por el contrario, la parte [apelante] no adeuda cuota alguna, porque según alega la parte [apelante], y citamos: "…. para las fechas en que Baome fue titular de los mismos, estos apartamentos no habían sido individualizados aún y, por tanto, Baome nunca fue [p]ropietario, según definido en la Escritura Núm. 9["."]

B. En adición, debemos resolver si la parte [apelante] adeuda a la co-[apelada] Asociación, las sumas de dinero acumuladas e impagadas, a la fecha en que la parte demandada adquirió las Villas, por concepto de cuotas de mantenimiento, desde abril de 2018 a septiembre de 2021.

O si[,] por el contrario, la parte [apelante] no adeuda suma alguna a la Asociación, según alega la parte [apelante], por alegadamente insuficiencia de las alegaciones de la Asociación y por falta de legitimación para requerir dicho cobro, procediendo la desestimación y sentencia sumaria, que contra la Asociación ha solicitado la parte demandada. (Énfasis omitido).[18]

Previo a resolver la solicitud de desestimación y la solicitud de sentencia sumaria pendientes, por entender que no había controversias sustanciales de hechos esenciales y pertinentes, el foro *a quo* resolvió las controversias de derecho que entendía estaban presentes en el pleito. Concluyó que Baome adeudaba y tenía que pagar a los apelados la totalidad de las cuotas de mantenimiento acumuladas a la fecha en que

---

[17] Apéndice del recurso, págs. 1153-1159.
[18] Íd., págs. 1152-1153.

adquirió el Edificio 8, según requeridas por la parte apelada desde abril de 2018 a febrero de 2021. Determinó que, desde el año 2008, mediante la Escritura Núm. 9, quedó establecida la obligación de pago de las cuotas de mantenimiento provisional, que tenía derecho a cobrar la Asociación hasta que se hubiese establecido el presupuesto, el cual, en efecto, fue establecido en el año 2018.

En atención a los petitorios pendientes, el foro apelado declaró No Ha Lugar la moción de reconsideración promovida por Baome. Concluyó que la Asociación había alegado y demostrado con prueba documental fehaciente, admisible e incontrovertible que era una entidad con personalidad jurídica, debidamente facultada y legitimada para requerir el cobro de las cuotas de mantenimiento a la parte demandada.

Asimismo, el foro juzgador declaró No Ha Lugar la solicitud de sentencia sumaria instada por el apelante. Resolvió que los apelados controvirtieron los hechos con declaración jurada y documentos fehacientes, como lo son las escrituras públicas y fotografías. Determinó que la parte apelada fundamentó cada una de sus alegaciones con las leyes aplicables, así como con la jurisprudencia vigente. Expresó que no había duda sobre la autoridad legal de la Asociación para requerir el cobro de las cuotas de mantenimiento de las propiedades acumuladas desde abril de 2018. Concluyó que Baome estaba obligado a pagar a los apelados las cuotas adeudadas al momento de comprar las Villas y el Edificio 8. Indicó que, contrario a lo propuesto por el apelante, las certificaciones expedidas por la Asociación a Baome eran totalmente legítimas y no eran contrarias a derecho. Sobre ese particular, determinó que dichas certificaciones reflejaban el balance adeudado en concepto de cuotas de mantenimiento de Baome a la Asociación.

Por otro lado, el tribunal de instancia declaró Ha Lugar la demanda enmendada y No Ha Lugar la reconvención. En vista de lo anterior, emitió una *Sentencia Sumaria* a favor de los apelados. Ordenó a Baome a pagar a la parte apelada la suma total de las cuotas de mantenimiento adeudadas

y, en consecuencia, autorizó a los apelados a retirar el dinero depositado en el Banco Popular. Además, determinó que la parte apelante había obrado con temeridad y frivolidad al reconocer las cuotas adeudadas, cobrarlas a los nuevos titulares de las propiedades en cuestión, enriqueciéndose injustamente. Por ello, impuso $2,000.00 en concepto de honorarios de abogado(a).

En desacuerdo, el 15 de noviembre de 2023, Baome presentó una moción de desestimación,[19] a la cual se opuso la parte apelada.[20] El 9 de enero de 2024, notificada el 22 del mismo mes y año, el Tribunal de Primera Instancia emitió una *Resolución* mediante la cual declaró No Ha Lugar la solicitud de reconsideración.[21]

Inconforme, el 20 de febrero de 2024, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

Erró el TPI al haber denegado la moción de desestimación de la apelante basada en insuficiencia de las alegaciones.

Erró el TPI al haber denegado la *Solicitud de Sentencia Sumaria* de la apelante sin considerar los planteamientos esbozados por la apelante e incumpliendo así con la Regla 36.3 de Procedimiento Civil y por haber concluido bajo la aplicación errónea del concepto de adquirente involuntario bajo la Ley de Condominios.

Erró el TPI al haber emitido *Sentencia Sumaria* a favor del coapelado Consejo[,] a[u]n cuando no existe prueba admisible en autos para sostener su causa de acción de cobro ni haberse solicitado la disposición de sus causas de acción de modo sumario.

Erró el TPI al haber condenado a honorarios de abogado por temeridad en la *Sentencia Sumaria.*

En cumplimiento con nuestra *Resolución* del 22 de febrero de 2024, la parte apelada compareció mediante *Alegato en Oposición a Apelación sobre Sentencia Declaratoria y Cobro de Dinero* el 20 de marzo de 2024.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

---

[19] Apéndice del recurso, págs. 1189-1198.
[20] Íd., págs. 1199-1206.
[21] Íd., págs. 1234-1236.

**II**

**A**

Nuestro ordenamiento jurídico promueve el interés de que todo litigante tenga su día en corte. Esta postura responde al principio fundamental y política judicial de que los casos se ventilen en sus méritos y se resuelvan de forma justa, rápida y económica. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1; *Banco Popular v. S.LG. Negrón*, 164 DPR 855, 874 (2005); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 124 (1992); *Amaro González v. First Fed. Savs.*, 132 DPR 1042, 1052 (1993). No obstante, nuestro ordenamiento permite la presentación de mociones dispositivas con el propósito de que todos o algunos de los asuntos en controversia sean resueltos sin necesidad de un juicio en su fondo. Los tribunales tienen el poder discrecional, bajo las Reglas de Procedimiento Civil, de desestimar una demanda o eliminar las alegaciones de una parte, sin embargo, ese proceder se debe ejercer juiciosa y apropiadamente. *Maldonado v. Srio. de Rec. Naturales,* 113 DPR 494, 498 (1982). Es decir, la desestimación de un pleito constituye el último recurso al cual se debe acudir. *S.L.G. Sierra v. Rodríguez,* 163 DPR 738 (2005).

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, es aquella que formula la parte demandada antes de presentar su alegación responsiva, mediante la cual solicita que se desestime la demanda presentada en su contra. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería*, 167 DPR 625, 649 (2006). Dicho petitorio deberá basarse en uno de los siguientes fundamentos: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2; *Costas Elena y otros v. Magic Sport Culinary Corp. y otros*, 2024 TSPR 13, resuelto el 16 de febrero de 2024; *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR

384 (2022); *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1065-1066 (2020).

Al resolver una moción de desestimación bajo el inciso 5 de la Regla 10.2 de Procedimiento Civil, *supra*, el tribunal tomará como ciertos todos los hechos bien alegados en la demanda, que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *Costas Elena y otros v. Magic Sport Culinary Corp. y otros*, supra; *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70 (2023); *Casillas Carrasquillo v. ELA*, 209 DPR 240 (2022); *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021). Asimismo, tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más favorable posible para la parte demandante. *Íd.*; *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra, págs. 428-429; *Dorante v. Wrangler of P.R.*, 145 DPR 408, 414 (1998). En vista de ello, la desestimación procedería únicamente cuando de los hechos alegados no podía concederse remedio alguno a favor de la parte demandante. *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013), citando a R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231. Tampoco procede la desestimación si la demanda es susceptible de ser enmendada. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, supra, pág. 429. En otras palabras, se debe considerar, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497 (1994); *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991). Ahora bien, si tras este análisis el tribunal aún entiende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la demanda, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. *Costas Elena y otros v. Magic Sport Culinary Corp. y otros*, supra.

**B**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Ins.*, 2023 TSPR 118, 212 DPR ___ (2023); *Oriental Bank v. Caballero García*, 2023 TSPR 103, 212 DPR ___ (2023); *González Meléndez v. Mun. San Juan et al.*, 2023 TSPR 95, 212 DPR ___ (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd*.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia

sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra, pág. 8; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd*.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd*. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd*. De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las

formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd*. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no

es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd*. No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Birriel Colón v. Econo y otros*, 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, supra; *González Meléndez v. Mun. San Juan et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otros*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág.

118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.*, supra.

**C**

En una acción de cobro de dinero, la parte demandante únicamente puede reclamar, por vía judicial, aquellas deudas que sean vencidas, líquidas y exigibles. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021). Respecto a ello, el Tribunal Supremo de Puerto Rico expresó que:

> El vocablo "líquida" en relación con una cuenta, en lenguaje corriente significa el saldo "o residuo de cuantía cierta que resulta de la comparación del cargo con la data". Y la voz "exigible" refiriéndose a una obligación, significa que puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

En ese sentido, la deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada". *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001), citando a M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168 y a *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965). Por otro lado, la deuda es "exigible" cuando la obligación no está sujeta a una causa de nulidad y puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, supra. Sobre ese particular, nuestro Tribunal Supremo determinó en *RMCA v. Mayol Bianchi*, supra, págs. 108-109, lo siguiente:

> La deuda es líquida por ser cierta y determinada, y es exigible porque puede demandarse su cumplimiento. Así que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha *sido aceptado como correcto por el deudor y que está vencido*". (Citas omitidas).

Por otro lado, la parte que exige el cumplimiento de una obligación es a quien le corresponde probar su existencia. *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711, 719 (2000); *H.R. Stationery, Inc. v. E.L.A.*, 119 DPR 129, 134 (1987). Lo anterior es cónsono con la Regla 110 de Evidencia de Puerto Rico de 2009, 32 LPRA Ap. VI, R. 110, pues el peso

de la prueba recae sobre la parte que resultaría vencida en caso de no presentarse prueba alguna.

**D**

La Regla 44.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 44.1, establece lo referente a la concesión de costas y honorarios de abogado(a) a favor de una parte. Específicamente, la citada regla les permite a los tribunales imponer el pago de una suma por concepto de honorarios de abogado(a) a una parte que actúa con temeridad durante el proceso judicial. *SLG González-Figueroa v. SLG et al.,* 209 DPR 138 (2022). A esos efectos, el inciso (d) de la precitada regla dispone lo siguiente:

> (d) *Honorarios de abogado[(a)]*.—En caso [de] que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado[(a)] que el tribunal entienda correspondan a tal conducta [...].

El Tribunal Supremo de Puerto Rico ha definido el concepto *temeridad* como la actuación terca, obstinada, contumaz y sin fundamentos de un litigante que obliga a la otra parte innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *SLG González-Figueroa v. SLG et al.,* supra. La conducta temeraria es una actitud que se proyecta sobre el procedimiento y afecta el buen funcionamiento y administración de la justicia. *Íd*.

La determinación de temeridad es un asunto discrecional de los tribunales de primera instancia. *SLG González-Figueroa v. SLG et al.,* supra. Los tribunales apelativos solo pueden intervenir cuando el foro de origen se excede en el ejercicio de discreción. *Íd*. El requisito de la existencia de una actuación temeraria hace que la Regla 44.1 de Procedimiento Civil de 2009, *supra*, tenga el propósito de penalizar o sancionar a la parte que incurre en la conducta proscrita por dicha regla. *Íd*. No obstante, el nuestro más Alto Foro ha relevado del pago de honorarios de abogado(a) a litigantes que pierden un pleito donde hubo controversias fácticas reales que requerían el examen de la prueba

testifical y documental. *Santos Bermúdez v. Texaco P.R., Inc.*, 123 DPR 351, 357-358 (1989).

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

La parte apelante sostiene en su primer señalamiento de error que el Tribunal de Primera Instancia erró al denegar su moción de desestimación, al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*. Hemos examinado cuidadosamente las alegaciones vertidas en la *Demanda* de epígrafe, los escritos de las partes al respecto, así como la normativa aplicable y concluimos que el foro *a quo* no incidió al declarar No Ha Lugar la solicitud de desestimación promovida por el apelante. Nos explicamos.

Según reseñáramos, el inciso (5) de la Regla 10.2 de Procedimiento Civil, *supra*, permite que la parte demandada presente una moción de desestimación levantando como defensa que la demanda incoada en su contra deja de exponer una reclamación que justifique la concesión de un remedio. Al resolver este tipo de moción dispositiva bajo dicho fundamento, se tomarán como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente; y que de su faz no den margen a dudas. Dichas alegaciones deben contener una relación sucinta y sencilla de los hechos y la solicitud del remedio. Ello sin perder de vista el criterio de plausibilidad, el cual exhorta a eliminar de la demanda aquellas alegaciones conclusorias que no deben presumirse como ciertas. Asimismo, tales alegaciones se interpretarán conjuntamente, liberalmente y de la forma más favorable posible para la parte demandante. La demanda no deberá desestimarse, a menos que se demuestre que la parte demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar. Tampoco procede la desestimación, si la demanda es susceptible de ser enmendada.

Al evaluar las alegaciones contenidas en la *Demanda* de epígrafe, concluimos que estas son suficientes y cumplen con los criterios establecidos en la Regla 10.2(5) de Procedimiento Civil, *supra*, según discutidos previamente. Luego de entender sobre las alegaciones esbozadas en la acción de epígrafe, colegimos que estas pueden dar base a una posible reclamación que justifique la concesión de un remedio, contrario a lo propuesto por el apelante. Conforme a lo resuelto por el Tribunal de Primera Instancia, de los hechos bien alegados en la acción de autos puede inferirse que, de demostrarse que la parte apelante incurrió en la conducta imputada, se pueden justificar los remedios solicitados. En atención a lo anterior, concluimos que el foro primario no incidió al declarar No Ha Lugar la referida solicitud de desestimación, por lo que el primer error señalado no se cometió.

Como segundo señalamiento de error, la parte apelante plantea que el foro primario incidió al denegar su *Solicitud de Sentencia Sumaria*, sin considerar los planteamientos esbozados por esta e incumpliendo así con la Regla 36.3 de Procedimiento Civil, *supra*. Añade que dicho foro falló en su proceder al aplicar erróneamente el concepto de adquirente involuntario, según estatuido en la Ley de Condominios, *supra*. En su tercer error señalado, arguye que el foro *a quo* erró al emitir una *Sentencia Sumaria* a favor del Condominio, aun cuando no existe prueba admisible en autos para sostener su causa de acción de cobro. Además, argumenta que dicha parte no solicitó la disposición de la acción de epígrafe de modo sumario. Por estar intrínsecamente relacionados los referidos señalamientos de error serán discutidos conjuntamente.

Luego de examinar cuidadosamente *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable, concluimos que el foro primario incidió en su determinación. Veamos.

En el caso de autos, el Tribunal de Primera Instancia declaró No Ha Lugar la solicitud de sentencia sumaria parcial promovida por la parte

apelante exclusivamente en cuanto a la Asociación. Sin embargo, dicho foro emitió la *Sentencia Sumaria* que nos ocupa a favor de la Asociación y del Condominio, adjudicando así la totalidad del caso sin que ello se solicitara y sin que tal dictamen estuviera respaldado por la prueba documental ante sí.

La parte apelada alega que Baome le adeuda $16,310.27 a la Asociación y $13,347.07 al Condominio en concepto de cuotas de mantenimiento impagadas desde abril de 2018 a febrero de 2021, previo a que este adquiriera las propiedades en controversia. En cuanto a la Asociación, argumenta que esta, en virtud de la Escritura Núm. 9, estaba facultada a cobrar una cuota provisional hasta tanto se aprobara el presupuesto del Condominio, el cual se aprobó a partir de abril de 2018. Específicamente, los apelados fundamentan su postura en el siguiente inciso de la mencionada escritura:

> "---(Dos) Cuota Regular Anual Provisional - "HACIENDA", **hasta tanto quede constituida como entidad independiente, la Asociación, fijará una cuota provisional de mantenimiento de SETENTA Y CINCO CENTAVOS DE DÓLAR ($0.75), por pie cuadrado ANUALES, la cual será pagada por cada "Propietario" mensualmente**[,] a partir del día primero (1ro) del mes siguiente a aquel que adquirió su Unidad de Vivienda. […]. (Énfasis nuestro).

Al revisar lo precitado, al igual que las alegaciones de la parte apelada, salta a la vista las controversias de hechos que el foro primario falló en esbozar y que impedían la resolución sumaria del caso. En primer lugar, del referido inciso de la Escritura Núm. 9, suscrita en el año 2008, se desprende que la Asociación fijó una cuota provisional hasta que el Condominio estableciera su presupuesto. En otras palabras, la Asociación cobraría, a nombre del Condominio, una cuota que esta fijó provisionalmente, hasta tanto el Condominio pautara su presupuesto, en cuya instancia la autoridad de la Asociación para cobrar la cuota provisional cesaría. Los apelados admiten que dicho presupuesto se fijó en abril de 2018. Es decir, la facultad de la Asociación para cobrar la cuota provisional cesó en abril de 2018, fecha desde la cual los apelados, tanto la Asociación como el Condominio, pretenden cobrar las cuotas de mantenimiento

presuntamente adeudadas. Cabe destacar que tampoco surge del expediente específicamente cuál fue la nueva cuota de mantenimiento establecida por el Condominio, si alguna, pues lo antes expuesto es únicamente en cuanto a la cuota provisional fijada por la Asociación.

Asimismo, del citado inciso surge que la Asociación fijó una cuota provisional de setenta y cinco centavos ($0.75), por pie cuadrado anuales, la cual debía ser satisfecha por cada propietario mensualmente. Al revisar *de novo* las certificaciones de deudas que obran en el expediente ante nos, no se desglosa específicamente los pies cuadrados de las propiedades que adquirió Baome, la cantidad total de la cuota provisional anual a ser pagada mensualmente, si dicha cantidad varió en algún mes o año y las razones de ello. De los escritos ante nos, no queda claro si lo que se adeuda son las cuotas provisionales fijadas por la Asociación, las cuotas de mantenimiento establecidas por el Condominio (quien cuenta con una Junta de Directores separada de la Asociación) o si se reclaman ambas. Tampoco queda claro el origen ni por qué unas cantidades van dirigidas a la Asociación, quien alega cobrar a nombre del Condominio, y otras al Condominio.

A lo anterior se le suma que hay controversias sobre desde cuándo Baome debía pagar por las cuotas de mantenimiento de las propiedades en cuestión. Sobre ello, los apelados plantean que Baome está obligado a pagar las cuotas de mantenimiento impagadas por el propietario anterior, Firstbank. Aducen que, en el contrato de compraventa suscrito entre Baome y Firstbank, este último le advirtió a Baome de su obligación de pagar las cuotas de mantenimiento vencidas. No obstante, de una breve lectura de la cláusula pertinente del referido contrato, lo único que Firstbank le advierte a Baome es de la obligación de este a pagar las cuotas de mantenimiento. Nada se expresa sobre la existencia de cuotas adeudadas o la obligación de Baome de pagarlas, ni se hace referencia a una cuota provisional fijada por la Asociación.

En apoyo a su contención, los apelados citaron la siguiente cláusula de la Escritura Núm. 9: "[c]ada '[p]ropietario' de Unidad de Vivienda, . . . por la mera titularidad de una Unidad de Vivienda, se obligará y se considerará como que acuerda y accede a todas las obligaciones, términos y disposiciones de esta Escritura incluyendo, . . . obligaciones relacionadas con . . . pagar las cuotas de mantenimiento de la 'Urbanización' o relacionadas con las mismas". En dicho extracto tampoco surge la obligación de un propietario de pagar las cuotas adeudadas por un propietario anterior, independientemente si este último era propietario voluntario o involuntario, según los planteamientos de los apelados. Ahora bien, ello no impide que el foro primario aplique lo referente al cobro de las cuotas de mantenimiento dispuesto en la Ley de Condominio, *supra*, una vez resueltas las controversias de hechos en el presente caso.

Sabido es que, en una acción de cobro de dinero, la parte demandante, en este caso la Asociación y el Condominio, únicamente puede reclamar, por vía judicial, aquellas deudas que sean vencidas, líquidas y exigibles. De una revisión cuidadosa del expediente ante nos, colegimos que existen controversias de hechos esenciales y materiales que impiden la adjudicación sumaria del caso de autos. En esta etapa de los procedimientos, ninguno de los documentos presentados por las partes establece claramente la existencia de una deuda, quién o quiénes son los acreedores y deudores, ni si tal obligación está líquida, vencida y exigible. En vista de lo antes expuesto, no albergamos duda de que el foro de origen erró al resolver el presente caso sumariamente aun cuando existen múltiples controversias de hecho que impiden la adjudicación sumaria y que requieren la continuación del trámite ordinario. En conclusión, el segundo y tercer error se cometieron.

Como cuarto y último error, la parte apelante aduce que el foro de origen incidió al imponerle el pago de los honorarios de abogado(a) por temeridad. En específico, la parte apelante impugna la imposición de $2,000.00 en honorarios de abogado(a) por temeridad y frivolidad.

Según reseñamos, nuestro más Alto Foro ha definido el concepto *temeridad* como la actuación terca, obstinada, contumaz y sin fundamentos, de una persona litigante que obliga a la otra parte innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. Del expediente ante nuestra consideración no surge que Baome fuera temerario, según definido, durante los trámites procesales que han transcurrido en este caso. En vista de ello, y conforme la normativa antes expuesta, concluimos que el foro primario abusó de su discreción al imponer los honorarios de abogado(a) por temeridad. Por consiguiente, el error señalado se cometió.

En fin, al evaluar concienzuda y ponderadamente *de novo* los eventos procesales al palio de la normativa jurídica antes esbozada, determinamos que no procede resolver el presente caso sumariamente y tampoco procede la imposición de honorarios de abogado(a) por temeridad. Por consiguiente, revocamos la *Sentencia Sumaria* que nos ocupa.

**IV**

Por los fundamentos que anteceden, revocamos el dictamen apelado y devolvemos el caso al foro primario para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones